First National Bank of Antigo, Respondent, vs. Savings Loan & Trust Company of Madison, Wisconsin, Appellant.

*December 11, 1931—March 8, 1932.*

For the appellant there were briefs by *Charles H. Avery* of Antigo and *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *G. Burgess Ela* and *Emerson Ela.*

*Ray C. Dempsey* of Antigo, for the respondent.

The following opinion was filed January 12, 1932:

WICKHEM, J. The defendants Stephen Cherf and Anna Cherf, husband and wife, resided in Langlade county for some time prior to 1922, and had executed a mortgage on their farm to one Henry Borgman. This mortgage was later assigned to Anna Borgman, wife of the mortgagee. In the fall of 1922 the defendants Cherf defaulted in the payment of interest and taxes. The mortgagee retained Henry Hay, an attorney of the city of Antigo, to collect the mortgage and to foreclose, if necessary. Upon receiving the demand sent out by Mr. Hay, the defendant Stephen Cherf consulted John T. Brown, of the Langlade County Abstract Company, for the purpose of re-financing his in-

debtedness. The Langlade County Abstract Company is operated by John W. Brown, father, and John T. Brown, son. The father was president and the son secretary of the company, the father being more active in the abstract business and the son in the loan business, which consisted of transmitting applications for loans to prospective lenders. The Abstract Company had dealt with the defendant Savings Loan & Trust Company for a number of years. Shortly after the visit to Brown's office, Cherf and John T. Brown went to the office of Mr. Hay and informed him that an attempt was being made to re-finance the Borgman mortgage; that the loan would be made in a very short time, and as a result of this representation Hay gave Cherf to understand that he would not begin foreclosure proceedings until the 20th of November. Cherf did not pay up the Borgman mortgage within the time limit, and Hay thereupon started foreclosure proceedings on the 12th of January, 1923, a judgment of foreclosure being entered on or about January 31, 1923. About that time Cherf went to Hay's office, received from him an abstract covering the premises, and stated that he was going to make a loan to take up the judgment. After this interview all of Mr. Hay's negotiations concerning the judgment were with John T. Brown. Some time between January 31st, when the foreclosure judgment was entered, and March 7, 1923, an application was made to the Savings Loan & Trust Company by Cherf, through the Abstract Company, for a loan to retire the Borgman judgment. At the time the application was submitted the Trust Company knew that the Borgman judgment was of record. The Trust Company acted upon the application and arrangements for a loan of $6,500 were made. An abstract of the property, together with a note and mortgage of Cherf and his wife, was sent to the Trust Company by the Abstract Company, and the mortgage was duly recorded on February 26, 1923. On or about March 7, 1923, a check

was sent by the Savings Loan & Trust Company to the Abstract Company for $6,500, payable to its order, together with the abstract and instructions to pay off the Borgman mortgage or judgment. Thereafter the abstract of title was returned to the Savings Loan & Trust Company showing satisfaction of the Borgman mortgage or judgment. This entry in the abstract was wholly fictitious and fraudulent, and was made by John T. Brown for the purpose of concealing his fraudulent conduct with respect to the transactions in question. The money received from the Savings Loan & Trust Company was not applied to the discharge of the Borgman mortgage, but appears to have been converted to the use of Brown. Brown, however, did later make a payment of $1,500 upon the Borgman mortgage under circumstances which will later be described.

In October, 1923, John T. Brown came to Hay's office and asked Hay to extend the time under the Borgman judgment for one year, upon payment of the unpaid taxes, costs of foreclosure, and guaranty of payment of future interest. Hay's client agreed to this upon the further condition that $1,500 would be paid upon the indebtedness. In December, 1923, $1,500 was paid by the Langlade Abstract Company, and the Abstract Company executed its guaranty to Mrs. Borgman to the effect that the premises would bring the amount of her mortgage on a foreclosure sale. No further conversations were held between Hay, Mrs. Borgman, the Cherfs, or the Browns until December, 1924, when Brown asked for a further extension of time, which was refused, and the premises advertised for sale, fixing February 7, 1925, as the date of sale. Thereafter John T. Brown applied to Hay for assistance in obtaining a loan for the purpose of taking up the balance due on the mortgage. Hay suggested that he go to the plaintiff bank and see if they would re-finance the loan. Hay promised to present the matter to the loaning board and see whether they would

consider the loan. Without going into details as to the arrangements, the bank determined to make the loan, and the property was bid in by John W. Brown on February 7, 1925, for $7,274.92, which represented the amount due on the foreclosure to the Borgmans, and in addition the $1,500 already paid by the Browns. On February 12th Brown executed a warranty deed to the bank, together with his note for $5,400. During all this time the mortgagors were in possession of the premises. The situation continued, with various payments of principal and interest and payment of taxes to the First National Bank, until March 5, 1928, at which time there was still due and owing $4,900 on the mortgage. At the time of the trial there was due to the plaintiff the sum of $5,387.50.

In July, 1928, the plaintiff learned for the first time of the claim of the Savings Loan & Trust Company, and immediately wrote the latter company claiming priority for its mortgage, and stating that the bank was about to foreclose. This letter was the first indication to the Savings Loan & Trust Company that there was any difficulty with respect to the loan. The plaintiff bank had made no examination of the title to the premises at the time of the loan, and did not receive an abstract until December, 1925, nearly a year after the loan. At the time the abstract was received it was not examined, although an examination of the abstract at that time would have disclosed the existence of the mortgage to the Savings Loan & Trust Company. During all this time the Cherfs remained in possession and made some payments to Brown. Cherf was under the impression that the only outstanding mortgage was that of the Savings Loan & Trust Company, and that the proceeds of their loan had retired the Borgman mortgage.

In substance, the court found that at the time of its loan to John W. Brown the bank relied upon the fact that the foreclosure judgment was a first lien upon the property, and

that it cut off all subsequent claims, and as a result of such reliance did not procure or examine the abstract of title and consequently knew nothing of the existence of the Trust Company's mortgage, and that the bank as well as the Trust Company and the Cherfs fully believed in and relied upon the honesty and business ability of the Browns.

The defendant contends that the court erred in its findings that the plaintiff bank did not have sufficient notice to put it upon inquiry in respect to the defendant Trust Company's mortgage. This contention is based upon (1) alleged facts which it is claimed should have put the bank upon inquiry, which inquiry, if followed, would have advised the bank of the true state of the title; and (2) upon the legal proposition that one dealing with real estate is bound to know the rights of one in possession, and is chargeable with the actual notice he would have received had inquiry been made of the person in possession.

Dealing with the first of the contentions, it is contended that since Cherf had previously obtained the abstract to the premises with the express purpose of getting the loan, and since following the payment of $1,500 upon the principal by Brown, professedly on behalf of Cherf, a loan of $5,000 could easily be obtained, according to Hay's own admission, Hay should have anticipated the possibility of Cherf having made a loan on his own behalf and should have inquired of Cherf concerning the facts. It is further contended that once the arrangements for re-financing by the bank were made, instead of making a new loan to Cherf, the deal was so arranged that John W. Brown would take title and that he gave to the bank a warranty deed sufficient in amount to protect the $1,500 which Brown claimed to have paid out of his own pocket on account of the mortgage.

It is suggested that the fact that Brown claimed the $1,500 had been paid by him or by the Abstract Company was enough in itself to put the bank upon inquiry. It is

also contended that the bank, by its failure to make an examination of the record or to have the abstract brought down to date and properly examined at the time of the loan, failed to make such inquiry as would ordinarily be suggested to a reasonably prudent person dealing with the title, and that the bank had constructive notice of the Trust Company's mortgage by reason of the recording of it. Since the trial court found that the bank had no notice, either of Brown's fraud or of facts which would reasonably put it upon inquiry, the sole question is whether the evidence will sustain such a finding. The fact that Cherf had theretofore expressed his intention of securing a loan and had taken the abstract from his office, is surely not enough to put Hay upon inquiry as a matter of law, even assuming that the bank should have imputed to it knowledge which Hay had acquired prior to and independently of his agency for the bank. Nor do we find anything in the fact that Brown claimed an interest to the extent of $1,500 that would, as a matter of law, put the bank upon inquiry. Brown had originally appeared with Cherf at the office of Hay in the rôle of agent for Cherf. He had made payments on behalf of Cherf. He appeared during all the negotiations to be making desperate efforts to save the property from foreclosure, and to preserve Cherf's equity of redemption. The record clearly discloses that not only the plaintiff, but the defendants Cherf and the Savings Loan & Trust Company, had implicit confidence in the integrity of Brown. It occurred to none of the parties at any time to question the honesty of his representations or his integrity of purpose, nor is there anything in the record, viewing the facts in the light of the situation existing at the time these transactions took place, that would reasonably tend to direct suspicion to him. The Abstract Company and the two Browns had been in business for many years, and had handled hundreds of thousands of dollars without any question ever having

been raised as to their honesty, and as a result enjoyed a splendid reputation in the community.

It seems to us that the court could find that the bank was justified in relying upon Brown's representations, and that it could further find that there was nothing in the situation which would have or should have put the bank upon inquiry. It is not at all clear that this court could have disturbed a contrary finding, although it seems upon the record that the finding accords with the preponderance of the evidence.

With respect to the plaintiff's failure to examine the abstract, the same comment may be made. Hay knew, and the fact was, that the foreclosure proceedings were perfectly regular, and that no mortgage made or recorded after the commencement of that action could have any rights superior to the Borgman mortgage. Hence the only thing that would suggest an inquiry to Hay would be a suspicion of Brown's honesty—a suspicion that Brown had secured the loan as agent for Cherf and had thereafter dissipated the proceeds. What has heretofore been said on this subject disposes of this contention. There were no grounds to suspect Brown, or at least the court could find that there were none.

The contention of the defendant that the possession of Cherf was sufficient to charge the bank with such notice as an inquiry of the person in possession would have disclosed, is considered to be without merit. Defendant contends that the law is well settled that one who takes title to premises takes them charged with the duty of making inquiry as to the rights of the person in possession, and that if no inquiry is made the purchaser is chargeable with the actual notice he would have received had he made inquiry.

The defendant relies principally upon the case of *Pippin v. Richards,* 146 Wis. 69, 130 N. W. 872. In that case, which was an action to cancel a deed from plaintiff to the defendant Boyer for fraud, and also to cancel a deed from

the defendant Boyer to the defendant Richards on the ground that the defendant Richards had notice of the equities, this court held that, since the plaintiff was in possession of the land when Richards purchased, Richards was chargeable with such notice as reasonable inquiry would have disclosed. The law, as stated by the defendant and as set forth in *Pippin v. Richards,* is perfectly well established and is conceded by the plaintiff. However, it should be pointed out that in the *Pippin Case* the plaintiff, after conveying the premises to Boyer, did not remove from the premises. Consequently his possession was not consistent with the record title. Under these circumstances it is clear that purchasers from Boyer were bound to make inquiry as to the right or claim under which plaintiff continued in possession. Where, however, the possession of the person upon the premises is not inconsistent with his record title, the same rule does not apply. In 5 Thompson, Real Property, p. 338, § 4251, it is stated:

"Possession, to operate as notice, should be inconsistent with the title upon which the purchaser relies. If the possession is consistent with the record title, the purchaser is not bound to make any inquiry concerning the title as indicated by the possession. No inquiry is suggested by the possession. If a person in possession holds under a deed upon record, apparently sufficient to explain his possession, a subsequent purchaser is not affected with notice of any other undisclosed title or interest which the occupant may have."

See, also, *Schumacher v. Truman,* 134 Cal. 430, 66 Pac. 591; *Brown v. Volkening,* 64 N. Y. 76; *Pope v. Allen,* 90 N. Y. 298; *Staples v. Fenton,* 5 Hun (N. Y.) 172; *Smith v. Yule,* 31 Cal. 180.

Applied to this situation, it is our conclusion that the fact that Cherf was in possession would not put the bank upon inquiry. His possession was not inconsistent with his record

title. He was the owner of the premises subject to the mortgage and was in possession. Had the record title been out of him, his possession would have been sufficient to arouse inquiry as to the extent and character of his rights.

The final argument of the defendant is that the court erred in its conclusion of law that the deed of the plaintiff was a first mortgage and that of the defendant Trust Company a second mortgage. It is argued that upon Brown's purchase at the foreclosure sale he became a constructive trustee for Cherf and the defendant Trust Company. This might be conceded without changing the result in this case. If plaintiff occupies the position of a *bona fide* purchaser for value, it is entitled to take free from the equities of Cherf and the Trust Company. Whether or not the bank occupies such a position as to be free from this contention depends upon the *bona fides* of its incumbrance. Since we find that the trial court's conclusions in this respect are correct, it follows that the judgment of the lower court must be affirmed.

The defendant Cherf not having appealed, no question is raised as to the validity of the court's determination as to him.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 8, 1932.