**FISCHER v. LIBERTY NAT. BANK & TRUST CO. IN NEW YORK et al.**

**No. 56.**

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Hardy & Hardy, of New York City (David Haar and David Brady, both of New York City, of counsel), for Liberty Bank.

A. Prentiss Butler, of New York City (Robert J. Sykes, of New York City, of counsel), for Wendell P. Barker.

Baker & Obermeier, of New York City (Oscar S. Rosner and Clarence R. Treeger, both of New York City, for Lippe.

Krause, Hirsch & Levin, of New York City (George C. Levin, of New York City, on the brief), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is a suit under section 60b of the Bankruptcy Act, 11 USCA § 96 (b) to recover moneys alleged to have been preferentially paid. Wilson, the bankrupt, was indebted to the three defendants, the bank, Lippe and Barker, under separate transactions, not necessary to describe, upon which they had unsuccessfully pressed him from time to time for payment. He had been appointed receiver along with Barker and one Richards, in a sequestration suit pending in the District Court for the Southern District of New York, and in September, 1930, the estate was ready to be closed. The suit was ancillary to one in Delaware, the New York assets had been liquidated, and the receivers were ready to turn over the assets to the Delaware receiver, Richards. All three had presented their claims for allowance to Judge Caffey, and their petitions were sub

judice. Before he had decided the case, on September twenty-ninth, the bank and Lippe for their joint interest procured from Wilson a document addressed to Barker and Richards, reading as follows: "I hereby authorize and direct you to pay over to Liberty National Bank and Trust Company in New York out of the first moneys or allowances allowed by the Court to me the sum of $9,447.80." Judge Caffey filed his decision on October third, allowing Wilson $28,000, and entered a final decree of distribution on October fourteenth, by which he directed the receivers to pay the allowances as fixed to themselves, to turn over certain books and papers to a person named, to sell some furniture and the like, and "after compliance with the foregoing provisions of this order, to turn over to" Richards, as receiver in Delaware, all the rest of the property. On the fifteenth Wilson and Barker drew and delivered two cheques to Wilson's order for the total amount of $9,447.80; these he endorsed to the bank, which kept one, and turned over the other to Lippe in accordance with their agreement. Barker testified that between the third and the fourteenth Wilson gave him an oral assignment of five thousand dollars in payment of his debt to him; and on the fifteenth Wilson and Barker drew and delivered a third cheque, also to Wilson's order, which he endorsed and delivered to Barker. These were the three payments recovered; Barker's being reduced to thirty-five hundred dollars for reasons not pertinent here.

Wilson was hopelessly insolvent from September twenty-ninth onward and an involuntary petition was filed against him on February 14, 1931, just within the period of limitation under section 60b, if the payments were preferences, but not if Wilson's oral assignment and his order of September twenty-ninth were valid transfers. Barker admitted that he knew of Wilson's insolvency, but the bank and Lippe maintained that they neither had knowledge, nor sufficient notice to charge them. The judge found that they had, and that the assignments were invalid because they were of Wilson's allowance as receiver which he could not assign.

■ Upon the issue of notice we need say very little. As to the bank, over three years before, Barker had told it that Wilson had no tangible assets, that he had been unsuccessfully examined in proceedings supplementary to execution, and had a number of judgments against him. In June of 1930 its own attorneys had told it that he was worthless financially, and it knew that any assignments of his allowances as receiver were of doubtful validity. On October seventh Barker told it that there was absolutely no possibility of collecting a cent from him. As to Lippe, he had in 1927 taken notes from Wilson which he discounted with his bank, on which Wilson defaulted and the bank took judgment. Wilson was examined in supplementary proceedings in the spring of 1928, at which an assistant of Lippe's attorneys was present, and of which he made a memorandum, filed in their office. Wilson then swore that there were judgments against him for nearly $60,000 and suits pending for $25,000; he disclosed no assets. Lippe took over the notes, and pressed Wilson monthly for rent of an office Lippe had let him; at one time—August, 1928—procuring an order in supplementary proceedings himself. He swore in November, 1928, that Wilson had been examined, and that judgments aggregating many thousands of dollars were outstanding against him. Two years later, he personally attended at Judge Caffey's chambers in an attempt to secure some of the allowance; he had had no reason to suppose that Wilson's financial condition had then improved. It needs no argument that on this showing both defendants had cause to believe that Wilson was insolvent. True, Lippe was insistent upon getting his claim in full, in which he succeeded, but a preferred creditor often does that. The only important issue is therefore whether the order of September twenty-ninth and the supposed oral assignment were valid, in deciding which we shall assume arguendo that Wilson's order created an equitable assignment of the fund (Spofford v. Kirk, 97 U. S. 484, 24 L. Ed. 1032); and that the oral assignment was in fact made. They were both for Wilson's pay as receiver, and while all his services had been rendered except that of distributing the fund, we nevertheless think that both were invalid.

■■ It is settled both in England and in this country, that the assignment of the future compensation of a public officer is not valid. Flarty v. Odlum, 3 Term Rep. 681; Lidderdale v. Montrose, 4 Term Rep. 248; Barwick v. Reade, 1 H. Black. 627; Wells v. Foster, 8 M. & W. 149; Arbuckle v. Cowtan, 3 B. & P. 321 (semble); Hill v. Paul, 8 Cl. & Fin. 295, 306, 307, (semble); Bliss v. Lawrence, 58 N. Y. 442, 17 Am. Rep. 273; B. N. Bank v. Wilson, 122 N. Y. 478, 25

N. E. 855, 9 L. R. A. 706, 19 Am. St. Rep. 507; Field v. Chipley, 79 Ky. 260, 42 Am. Rep. 215; Bangs v. Dunn, 66 Cal. 72, 4 P. 963. In re Worthington, 141 N. Y. 9, 35 N. E. 929, 23 L. R. A. 97, extended this to an executor. In Flarty v. Odlum, Buller, J., said obiter that he should have taken the opposite view as to earned fees, and Lord Eldon (Davis v. Marlborough, 1 Swanston 74, 79) and Baron Parke (Wells v. Foster, 8 M. & W. 149, 152), appear to have been of the same opinion. In Arbuthnot v. Norton, 5 Moore, 219, the Privy Council held valid the assignment by an Indian judge of an allowance payable after his death, on the theory that it had no relation either to his services, or to his style of living, which in England appears to have been regarded as of interest to the public. There is also American authority that compensation, if due, and perhaps if earned, may be assigned. Stewart v. Sample, 168 Ala. 270, 53 So. 182; Ex Parte Stewart, 185 Ala. 216, 64 So. 36; Thompson v. Cullers (Tex. Civ. App.) 35 S. W. 412; Kaminsky v. Good, 124 Or. 618, 265 P. 786; Restatement of Contracts, § 151, Illustration 7 to Comment b. By an assignment of his future pay a public officer strips himself of further inducement to perform his services and thus chills his efforts. When the pay has already become due and can be collected, this is no longer true; there is no more reason for avoiding the assignment than in the case of any other chose in action. When, though not due, it has been unconditionally earned, or is subject only to a condition not dependent upon his future conduct, the same is true. Such was the case in Milnor v. Metz, 16 Pet. 221, 10 L. Ed. 943, where a gauger in the customs service had a claim for past services which Congress alone could grant. The services of a receiver are not payable under a fee bill, or tariff; nor do they fall due de die in diem on a quantum meruit. His compensation is always conditional upon his conduct up to the moment when it is payable; before that time to give validity to his assignment would permit him to realize upon what is not yet his, and what some future services alone can give him. Ad interim allowances, when made, do not fall within this class, nor indeed do final allowances after the conclusion of the services for which they are granted. But the last include the distribution of the estate, since otherwise the receivers have no further inducement for dispatch, and may let the winding up drag along without excuse,

which is exactly what happened in the case at bar.

A final decree directing distribution might conceivably allow the receivers their pay in advance of distribution; but it never should, and would be clearly improper if it did. The decree under which Wilson's allowance was made, did not do so; the words, "after compliance," in prescribing the time for distribution, did not allow the receivers to take their pay in advance; the cheques should not have been delivered except as part of the distribution itself. Therefore neither Judge Caffey's decision, nor his decree, gave them any unconditional right, and the receivers had not yet earned any part of their allowances; they would never do so, if they failed to distribute. There was nothing to assign except upon a condition which depended upon their own future action.

In Re Brown, 4 F.(2d) 806, this court affirmed an order, made by me in the District Court, which did indeed apportion the final allowance of a receiver who had become bankrupt. The petition in bankruptcy was filed while the receivership was pending, and the bankrupt continued to act as receiver thereafter. His trustee was given two-thirds of his allowance, apparently on the theory that this represented the value of the services before bankruptcy. The point upon which we decide the case at bar was neither clearly presented in the briefs, nor discussed in the opinion; so far as appears all that we supposed we were deciding was that the earned pay of a receiver might be assigned. To this we agree, but in so far as the decision held that a receiver earns any part of his final allowance until he has distributed the estate, it now seems to us to have been an inadvertence.

The bank in addition insists that, though the assignment were invalid, since Wilson could not himself have recovered the payments made at his direction, his trustee is in like case. Roesch v. W. B. Worthen Co., 95 Ark. 482, 130 S. W. 551, 31 L. R. A. (N. S.) 374, is the decision most closely in point; it refused relief to a garnishing creditor of a public officer who had assigned his pay in advance to another creditor, who collected after it became due. The court said that as the officer could not himself get back what had been paid, the creditor must stand in his shoes, and had nothing to garnish. The decision illustrates no more than the difference between the claim of a cred-

itor seeking to avail himself of his debtor's rights against a third person, and that of a trustee in bankruptcy avoiding a preferential payment. Obviously so far as the trustee is collecting the bankrupt's assets, he can never recover a preferential payment. The bankrupt could not, and he is confined to the bankrupt's rights. It is only because the statute by its fiat avoids the transaction, good as between the original parties, that the trustee has any standing at all. No creditor is in his position, except by virtue of some equivalent provision, of which there was none in the case cited. Unless the assignments gave the defendants a present right in Wilson's allowance as receiver, they stood like any other creditors, who, with knowledge of the insolvent's condition, took what they knew or had cause to know, was more than their share of the common fund. This is the wrong against which section 60b is directed; it has no relation to a creditor's right to follow the assets of his debtor.

Decree affirmed.