In the Matter of Kenneth A. STEELE and Diana L. Steele, Debtors.

Michael E. KEPLER, Trustee, Plaintiff,

v.

Kenneth C. STEELE, Doris A. Steele, and Bank of Sun Prairie, Defendants.

Adv. No. 82–0038.

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 14, 1983.

---

Michael Kepler, Paskin & Kepler, Madison, Wis., trustee.

Robert Salinger, Petrie, Stocking, Meixner & Zeisig, S.C., Milwaukee, Wis., for defendants Kenneth C. and Doris A. Steele.

Robert Brill, Aulik & Brill, S.C., Sun Prairie, Wis., for defendant Bank of Sun Prairie.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

Debtors Kenneth A. and Diana L. Steele filed a chapter 7 petition on October 29, 1981, listing on their schedule of assets an interest in a residence on two parcels in Dodge County, Wisconsin. This adversary proceeding was brought to resolve competing claims to that residence ("the property"). The debtor's parents, Kenneth C. and Doris Steele ("parents") claim that they, rather than the debtors are the owners of the property. The Bank of Sun Prairie ("Bank") claims a first and paramount mortgage interest in the property. The trustee in bankruptcy seeks to characterize the parents' interest as a mortgage, avoid that interest pursuant to 11 U.S.C. §§ 544(a)(3) and 547(b), and to preserve the parents' mortgage to gain priority over the bank's mortgage pursuant to 11 U.S.C. § 551. The proceeding is presently before the court on the trustee's motion for summary judgment.

The following facts, taken from papers filed in this proceeding to date, are here recited as construed most favorably to the parties opposing the motion. In July 1978, the parents were involved in negotiations to purchase the property from the First National Bank of Columbus ("First National"). To minimize the tax impact of the sale of the parents' property in Waukesha County, Wisconsin, an exchange was set up in which the debtor was to take title to the property as an agent or "straw man." The property was conveyed from First National to the debtor in October of 1978. Although the parents paid the consideration of $72,000.00, the debtor was the grantee on the deed and the owner of record.

On July 19, 1980, the debtor gave the Bank a mortgage on the property, as security for a promissory note of $212,000.00. The mortgage included the statement: "This is a second mortgage on each of the properties, and is subordinate to existing first mortgages and successor first mortgages." Whether the Bank had notice of any interest in the property claimed by the parents, and whether this statement was intended to subordinate the Bank to the parents' interest or to a then-existing mortgage on the property held by Farmer's Union Bank are disputed facts in this case.

On September 15, 1981, 44 days before debtors filed bankruptcy, a two-page document was recorded in the Dodge County Register of Deeds. The first page includes the following:

> Oct. 2, 1978
>
> I hereby agree that my parents, Kenneth C. Steele and Doris A. Steele, having provided financing for this property, I will sell it at their direction to someone who will exchange for their duplex at 126 Lake St. in Pewaukee.
>
> I further agree not to use this property (in the Town of Elba) as security during this period.
>
> (signed)
> Kenneth A. Steele

A hand written note appears beneath the quoted statement, by which the debtor, Kenneth A. Steele, promised to pay his parents $72,000.00 on demand with 9 percent annual interest.

The second page contains only the statement "[t]his mortgage refers to the following described land:" followed by a legal description of the property and a notarization. No signatures appear on the second page.

Under 11 U.S.C. § 544(a)(3) the trustee has whatever rights a hypothetical bona fide purchaser from the debtor at the time of commencement of the case would have.

> § 544. Trustee as lien creditor and as successor to certain creditors and purchasers.
>
> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, the rights of the parents in the property as against the trustee would be limited to those of which adequate notice is given under applicable law to defeat claims of a subsequent purchaser. Although 11 U.S.C. § 544(a)(3) vests the trustee with all of the rights that a bona fide purchaser could assert, the extent of those rights is determined by substantive state law. *See* 4 *Collier on Bankruptcy* ¶ 544.02 (15th ed. 1982).

In some cases, the application of 11 U.S.C. § 544(a)(3) has been relatively straightforward. For example, in *In Re Hastings,* 4 B.R. 292, 6 B.C.D. 401, 2 C.B. C.2d 88 (Bkrtcy.D.Minn.1980) the debtor gave a mortgage on his homestead in the form of a quitclaim deed. Applying 11 U.S.C. § 544(a)(3), the court held that since the defendant had taken no steps to record the mortgage under Minnesota law, the trustee could avoid the mortgage. *See also In Re Washburn & Roberts, Inc.,* 17 B.R. 305 (Bkrtcy.E.D.Wash.1982).

The present case is unusual in that there was a recording. The dispute is whether that recording constitutes notice of the parents' claimed ownership interest in the property. If the document does not provide notice of the parents' interest, a purchaser could rely on the Wisconsin recording act,[1] to defeat the parents' interest. In the recent case of *Kordecki v. Rizzo,* 106 Wis.2d 713, 317 N.W.2d 479 (1982), the Wisconsin Supreme Court defined a good faith purchaser:

> To claim the benefits of sec. 706.08(1)(a) as a purchaser in good faith ... (the subsequent purchaser) is deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title. A purchaser in good

---

1. Sec. 706.08(1)(a) provides:

Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

faith is one without notice, constructive or actual, of a prior conveyance. *Fallass v. Pierce,* 30 Wis. 443, 469 (1872).

106 Wis.2d at 719–20, 317 N.W.2d 479 (footnote omitted).

Parents contend that the language of the agreement signed by the debtor was sufficient to put any prospective purchaser on notice that they were the equitable owners of the property. They point to the acknowledgment of their power to direct the sale, and the restrictions on the debtor's use of the property as security. This court is not persuaded that either of the noted characteristics is, in the context of the questioned document, an indication of ownership. The trustee correctly notes that the same language indicates ownership by the debtor, since it says "I will sell." Further, the trustee correctly observes that the document, taken as a whole, with the included promise to pay by the grantor has characteristics common to a mortgage. Finally, the internal characterization of the document as a mortgage in the preface to the legal description is entitled to be taken seriously by anyone inspecting the record. In the present case, a purchaser examining the filed document would only have notice of a mortgage interest claimed by the parents.

Just as a purchaser of property is deemed to have notice of all recorded instruments, he is also deemed to have knowledge of the rights of parties in possession of the property:

> It is well established, possession of land is constructive notice and is sufficient to put the purchaser on his guard of whatever rights the possessor may have in the land if such possession is visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with, or adverse to the title or interest of the vendor.... Such possession is considered constructive notice of the rights of the possessor, whether the possession is used for the purpose of charging a purchaser with notice of an outstanding equity or of an unrecorded conveyance.

*Bump v. Dahl,* 26 Wis.2d 607, 612, 133 N.W.2d 295 (1965). (Citations omitted.)

The U.S. Court of Appeals for the Third Circuit recently reversed decisions by the Bankruptcy Court and the District Court and held that a trustee could be charged with knowledge of possession of property, to preclude him from asserting the rights of a bona fide purchaser under 11 U.S.C. § 544(a)(3). *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982). A case from the Bankruptcy Court for the Eastern District of Pennsylvania has construed *McCannon* to hold that the trustee could be considered not to have actual notice, but 11 U.S.C. § 544 did not provide the trustee any "protection" from constructive notice. *In Re Jones,* 20 B.R. 988, 3 BANKR.L.REP. (CCH) ¶ 68,742, at 80,989 (Bkrtcy.E.D.Pa.1982). Thus, in the present case if the parents were in possession of the property at the time of debtor's filing in bankruptcy, the trustee would have constructive notice of their claimed ownership, barring him from asserting bona fide purchaser status. *See Bump v. Dahl, supra.*

The parents acknowledge that they reside in Waukesha County, but claim that they were "recognized in the community as the owners of the property," and that the father maintained the property. The extent of possession necessary to place a prospective purchaser on notice has been held to be similar to that required for adverse possession. *Miller v. Green,* 264 Wis. 159, 163–64, 58 N.W.2d 704 (1952). In *Miller,* the Wisconsin court stated that actual residence on land is not necessary for constructive notice. However, that case involved farmland and the possessor was engaged in the "customary acts of possession which could be exercised as to unoccupied farmlands at such time of year." *Id.* at 164, 58 N.W.2d 704. Since the property in the present case is a residence, the possession adequate to give constructive notice would seem to be nothing less than occupancy unless special circumstances, such as prominent "for sale" or "for rent" signs advertising the identity of the owner, were present.

Neither residence by the parents, nor special circumstances are alleged. The parents state that the property was leased

to the debtor, in exchange for payment of property taxes. The debtor apparently has been in possession of the property. Where possession of property is not inconsistent with record title, a purchaser need not make inquiry as to the possessor's interest. *First National Bank v. Brown,* 207 Wis. 272, 240 N.W. 381 (1932). Since there is no basis on which it could be determined that the parents' possession was "open, clear, full, notorious, unequivocal, unambiguous, inconsistent with or adverse to" the record owner's interest, *see Bump v. Dahl, supra,* the trustee is without constructive notice. Having determined that the trustee qualifies as a purchaser without notice of any ownership by parents, he is entitled to summary judgment under 11 U.S.C. § 544(a)(3).

■ We are also asked to determine whether the parents' "mortgage" on the property may be avoided as a preferential transfer under 11 U.S.C. § 547(b) which states:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
> (i) was an insider; and
> (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The only dispute concerning the applicability of 11 U.S.C. § 547 is whether the first element of a preferential transfer, a "transfer of property of the debtor" is presented. There can be no dispute that the giving of a mortgage constitutes a "transfer." *See* 4 *Collier on Bankruptcy* ¶ 547.14 (15th ed. 1982). Regardless of the character of notice provided by the document filed September 15, 1981, the parents assert that no mortgage was given to them by the debtor at that time or at the October 2, 1978 date of the document. They argue that the court should exercise its powers as a court of equity and recognize them as the owners of the property, without specifying the equitable basis of their claim. They leave it to the court to speculate how the recorded deed to the debtor might be disregarded.

■ There is apparently no dispute that the parents paid the consideration of the property. At common law, a purchase money resulting trust would arise in favor of a party paying the consideration for property that was conveyed to another. Wisconsin has by statute abolished that common law rule in Wis.Stat. § 701.04(1):

> If title to property is transferred to one person and all or part of the purchase price is furnished by another, the latter may not enforce a purchase money resulting trust.

The statute abolishes only the purchase money resulting trust. Where there are "extrinsic equities" in connection with payment, the statute is inapplicable. *Masino v. Sechrest,* 268 Wis. 101, 105–06, 66 N.W.2d 740 (1954).

■ When "extrinsic equities" are present, a constructive trust may be imposed. The Wisconsin Supreme Court has restated the basis of this equitable doctrine:

> (A constructive trust) is implied by operation of law as a remedial device for the protection of a beneficial interest against one who either by actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct, has either obtained or holds the legal title to

property which he ought not in equity and in good conscience beneficially enjoy. *Richards v. Richards,* 58 Wis.2d 290, 206 N.W.2d 134 (1973), citing *Estate of Massouras,* 16 Wis.2d 304, 312, 114 N.W.2d 449 (1962). Although the presence of fraudulent or wrongful conduct is frequently the basis of the constructive trust, the Wisconsin cases have also focused on the potential unjust enrichment of the grantee. *Estate of Massouras, supra,* at 312–13, 114 N.W.2d 449; *Richards, supra* 58 Wis.2d at 297, 206 N.W.2d 134. In *Masino v. Sechrest, supra,* the court held that if proven, a constructive trust could be imposed against the eldest daughter in a family, who had taken title from the mother on an oral trust for the benefit of all the children. There was no allegation that the conveyance was procured by fraud, but the court found that the subsequent repudiation of the trust was an abuse of the confidential relationship that existed between mother and daughter, noting: "... confidential relationship as an element of fraud is one of the grounds for raising a constructive trust based on unjust enrichment." *Masino, supra* 268 Wis. at 111, 66 N.W.2d 740. Contrast a related case, *Masino v. Sechrest,* 268 Wis. 112, 66 N.W.2d 745 (1954) where the defendant's brother purchased property and had it placed in her name. The court found none of the "essential extrinsic equities" which would make the case anything more than a claim for resulting trust. The court did not distinguish the related *Masino* case other than to state: "There is no claim of a promise in words, and none arises from the set of circumstances pleaded, to show an obligation assumed by respondent." *Id.* at 115, 66 N.W.2d 745. Taking these two cases together, the court must conclude that a mere dispute concerning the transfer of property will not necessarily give rise to

finding abuse of a confidential relationship, there must be something more alleged. Since there is no allegation that the debtor has repudiated his agreement with his parents, or acted in any fraudulent manner, a constructive trust cannot be imposed.

No other basis for finding the absence of a transfer by the recording of the "mortgage" on September 15, 1981, having been suggested by the parents or imagined by the court, the basis for application of 11 U.S.C. § 547(b) is complete. The transfer was made and is voidable by the trustee.

■ The question remains whether the trustee may have the benefit of the voided transfer in seeking priority over the Bank. There is no dispute that if the mortgage is valid, the trustee may step into the parents' position as holder of a valid first mortgage pursuant to 11 U.S.C. § 551.[2] However, if the mortgage is not valid under Wisconsin law the situation may be different. Without a valid mortgage the parents have no claim as secured creditors. Then it may be, as argued by the Bank, that the trustee would gain nothing by stepping into the parents position.

The Bank is the only party which has addressed this issue. In its pretrial statement the Bank made the cryptic statement "... the lien maintained by the Trustee is (a) Defective under Wisconsin Law;" upon which it premises the contention that its interest is prior to that of either the parents or the trustee.

The Bank points to no specific defect in the "mortgage" rendering it invalid. The only potential defects which suggests themselves to the court would arise under the statute of frauds, Wis.Stat. § 706.02(1), which sets forth the formal requisites of a land transaction.[3] A quick comparison of the document to that statute discloses no

**2.** 11 U.S.C. § 551 provides:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

**3.** 706.02 Formal requisites. (1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

(a) Identifies the parties; and

(b) Identifies the land; and

(c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest

obvious defect. However, even if the transfer is rendered invalid by one or more such defects, the transfer may be preserved by the trustee. Both commentary and cases suggest that even invalidated transfers may be preserved by the trustee. *Collier* provides some assistance in this analysis:

> Whether an illegal or invalid transfer may constitute a 'transfer' within the Code is not clear. It would seem preferable to hold that, while such a transfer might also be declared void by virtue of such illegality or invalidity, nevertheless, it constitutes a 'transfer' under the Code. An attempted transfer that falls short of an actual transfer and is ineffective for the purpose intended cannot constitute a preferential transfer.

4 *Collier on Bankruptcy* ¶ 547.08 at 547.31 (15th ed. 1982) (footnotes omitted). The question as articulated by this commentary is whether in fact a "transfer" took place in the first instance, not whether it could subsequently be invalidated.

One case cited in *Collier* is *Fischer v. Liberty Nat. Bank & Trust Co.*, 61 F.2d 757 (2d Cir.1932), *cert. denied* 288 U.S. 611, 53 S.Ct. 403, 77 L.Ed. 985 (1933). In that case, a debtor assigned future income to one of his creditors just before an involuntary proceeding was commenced. The transfer was invalid because of the common law rule prohibiting a public official from assigning future compensation. The court held that notwithstanding the invalidity of the assignment, it constituted a voidable preference, which could be attacked by the trustee. *Fischer* was cited in a more recent case, *G.F. Wertime, Inc. v. Turchick*, 358 F.2d 802 (2d Cir.1966) which dealt with the validity of a mortgage. In that case, a mortgage was executed on personal property of the majority shareholder to his corporation for no consideration. The mortgage was then assigned by the corporation to Wertime, one of the creditors of the majority shareholder. Finally, the property was conveyed from the shareholder to the corporation. When the trustee tried to set aside the transfer as a preference, the creditor argued that there was no transfer since the underlying mortgage, given without consideration, was invalid under New York law. The court rejected this argument:

> Our conclusion that the debtor corporation, Kinne Co., "suffered" a transfer of real property that may be voided by the reorganization trustee even though that transfer may have at first transferred nothing receives strong support from the decision of this court in *Fischer v. Liberty Nat'l Bank & Trust Co....* And this court unanimously ruled that these transfers, invalid and thus worthless when first made, were nevertheless preferences that could be set aside by the trustee.... Any other result in either *Fischer* or the present case would violate common sense.

*Id.* at 810–11. (Citations omitted.)

In the present case there is no suggestion from the pleadings or papers filed with the court that the debtor did not in fact convey or transfer to the parent an interest in the property. Such a transfer was central to the scheme pursuant to which the property was purchased. That the conveyancing was less than artful and the recording tardy is obvious. Those deficiencies are bases for claims both that the transfer may be legally invalidated and voided in bankruptcy as a preference. But they do not serve to upset or negate the fact that a transfer was in-

is to arise, continue or be extinguished, limited or encumbered; and

(d) Is signed by or on behalf of each of the grantors; and

(e) Is signed by or on behalf of all parties, if a lease or contract to convey; and

(f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage; and

(g) Is delivered. Except under s. 706.09, a conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or conditioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death.

tended and made. That is sufficient to provide the necessary foundation for the trustee's claim as a successor to the parents' interest as mortgagees of the property.

There remains a dispute as to the relative priorities of the trustee and the Bank. The dispute arises from the following clause in the Bank's mortgage: "this is a second mortgage on each of the properties and is subordinate to existing first mortgages and successor first mortgages." The trustee and the parents both claim that the Bank had actual notice of the parents prior "claim" to the property. The Bank denies that it had notice of parents' claim and contends that the clause was only intended to subordinate them to a prior mortgage on the property which was given by debtor and Plainwood Farms, Inc. to Farmers Union Bank on May 23, 1979 and recorded June 13, 1979. Bank further argues that the parents' mortgage did not come into existence until September 10, 1981. Summary judgment cannot be granted on these contested issues of fact.

Partial summary judgment in accordance with this decision may be entered in favor of the trustee. A hearing on the remaining contested issues of fact will be noticed by a separate order.