**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000401**
**12-MAR-2021**
**07:46 AM**
**Dkt. 141 MO**

NO. CAAP-17-0000401

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


GERALD K. MOUNT, JR. and JANE R. MOUNT,
Plaintiffs/Counterclaim-Defendants/Appellees,
v.
MARGARET APAO, Defendant-Appellant
and
DIRK APAO, as Co-Personal Representative of the
Estate of ROSE MARIE ALVARO, Deceased,
Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff/Appellant,
and
SESHA LOVELACE, as Co-Personal Representative of the
Estate of ROSE MARIE ALVARO, Deceased,
Defendant/Cross-Claim Defendant/Appellee,
and
WALTER SCOTT BURGESS, Defendant-Appellee,
and
U.S. BANK NATIONAL ASSOCIATION, a National Association
as Trustee for the Structured Asset Securities Corporation
Mortgage Pass-Through Certificates, 2005-SC1,
Third-Party Defendant/Cross-Claim Plaintiff/Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; ALL PERSONS
RESIDING WITH ANY PERSONS CLAIMING BY AND THROUGH OR
UNDER THEM, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-2005)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Chang, Circuit Court, J. (in place of Wadsworth, J., recused) and Kim, Circuit Court, J. (in place of Leonard, Hiraoka, and Nakasone, JJ., recused))

Defendant-Appellant Margaret Apao and Defendant/Counterclaim Plaintiff/Third-Party Plaintiff-Appellant Dirk Apao, as co-personal representative of the Estate of Rose Marie Alvaro (collectively the **Apaos**) appeal from an "HRCP Rule 54(b) Judgment" filed on May 5, 2017, by the Circuit Court of the First Circuit (**Circuit Court**).[1]  The Apaos also challenge an "Order Granting Plaintiffs/Counterclaim Defendants Gerald K. Mount, Jr. and Jane R. Mount's *Renewed* Motion for (1) Summary Judgment as to Their Complaint Filed on September 7, 2011, and (2) for Partial Summary Judgment as to Defendant Dirk Apao, as Personal Representative of the Estate of Rose Marie Alvaro, Deceased's Counterclaim and Third Party Complaint for Wrongful Foreclosure, Quiet Title, and Damages Filed on October 11, 2011; Order Denying Defendant/Counterclaim Plaintiff/Third Party Plaintiff Dirk Apao's Renewed Motion for Partial Summary Judgment on the Counterclaim and Third Party Complaint for Wrongful Foreclosure, Quiet Title, and Damages, Filed October 11, 2011" (**Order Granting Renewed Motion for Summary Judgment**) filed by the Circuit Court on March 14, 2017.[2]

On appeal, the Apaos contend that the Circuit Court erred by ruling that Plaintiffs/Counterclaim Defendants-Appellees Gerald K. Mount, Jr., and Jane R. Mount (the **Mounts**) were innocent or bona fide purchasers of 2979 Makalei Place in Honolulu (**the Property**), such that they were entitled to summary judgment and possession of the Property.

We conclude that the Circuit Court properly granted summary judgment for the Mounts and therefore we affirm.

---

[1]  The Honorable Keith K. Hiraoka entered the Judgment.

[2]  The Honorable Karen T. Nakasone presided.

## I.  Background

This is the second appeal in this ejectment action, which the Mounts initiated seeking, *inter alia*, judgment and writ of possession regarding the Property following a nonjudicial foreclosure.  The Mounts claim title based on their company, Fair Horizon LLC (**Fair Horizon**), being the prevailing bidder at a public auction pursuant to a nonjudicial foreclosure on the Property, and a Limited Warranty Deed recorded on July 22, 2011, that transferred the Property to them.

In the first appeal in this case, the Hawaiʻi Supreme Court held, *inter alia*, that the nonjudicial foreclosure, by U.S. Bank National Association, a National Association as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-SC1 (**U.S. Bank**), was conducted in violation of HRS § 667-5 (Supp. 2008).  Mount v. Apao, 139 Hawaiʻi 167, 179-80, 384 P.3d 1268, 1280-81 (2016) (**Mount I**).  In determining the proper remedy, however, the supreme court ruled that further proceedings were necessary to determine if the Mounts were innocent purchasers for value, such that voiding the foreclosure sale was impracticable.  Id. at 180, 384 P.3d at 1281.  The supreme court explained:

> In this case, however, the Mounts completed the sale, took possession of the Property, and have now had the Property for some time, similar to the facts in Santiago.  In [Santiago v. Tanaka, 137 Hawaiʻi 137, 366 P.3d 612 (2016)], we held that "[w]here it is determined that the nonjudicial foreclosure of a property is wrongful, the sale of the property is invalid and voidable at the election of the mortgagor, who shall then regain title to and possession of the property."  137 Hawaiʻi at 158, 366 P.3d at 633.  We also held that where the property has passed into the hands of an innocent purchaser for value, rendering the voiding of a foreclosure sale impracticable, an action at law for damages is generally the appropriate remedy.  Id.
>
> As noted earlier, based on its other rulings in favor of the Mounts, the circuit court deemed moot their motion for partial summary judgment alleging bona fide purchaser status, and the Mounts withdrew that motion.  Therefore, the circuit court never addressed whether the Mounts qualify as "innocent purchasers for value" under the Santiago rule.  Upon remand, the circuit court is to apply Santiago to determine an appropriate remedy for the wrongful foreclosure.

139 Hawaiʻi at 180, 384 P.3d at 1281.

On remand, both the Apaos and the Mounts filed renewed motions for summary judgment on the question of whether the Mounts were innocent (or bona fide) purchasers of the Property. Based on the record, including the evidence submitted on remand by the parties, the following are the undisputed facts relevant to this appeal.

In 1999, Rose Marie Alvaro (**Alvaro**) obtained a loan from Fremont Investment & Loan secured by a mortgage on the Property. Mount I, 139 Hawaiʻi at 169, 384 P.3d at 1270. Alvaro passed away in 2002, and her estate went to Probate Court. Id. The Apaos are the sister and nephew of Alvaro, respectively. Id. at 168, 384 P.3d at 1269. Subsequently, the note went into arrears, and U.S. Bank commenced foreclosure proceedings. Id. at 170, 384 P.3d at 1271.

The Mounts, through Fair Horizons, purchased the Property as the high bidder at the nonjudicial foreclosure auction. The Mounts' affidavits, submitted in support of their renewed motion for summary judgment, establish that the nonjudicial foreclosure auction was held on April 4, 2011; both of the Mounts attended the auction to bid through Fair Horizon; approximately three to five other parties participated in the bidding; there were approximately fifteen to twenty bids between the participating parties; and Fair Horizon ultimately won the auction with a bid of $1.21 million.

On April 18, 2011, the Mounts received the preliminary title report for the Property, which reflected the probate proceeding for the Estate of Alvaro. Subsequently, on June 9, 2011, an attorney assisting the Mounts with the purchase of the Property advised them that he had reviewed the documents filed in the probate proceeding and the probate proceeding did not involve any challenge or any alleged problems with the foreclosure by U.S. Bank.

On July 22, 2011, a Limited Warranty Deed transferring the Property from U.S. Bank to the Mounts was recorded. Later that same day, when the Mounts' representative visited the

4

Property, he discovered that the property was occupied and the residents were unwilling to discuss an agreement for them to vacate the Property.  The evidence in the case shows that Margaret Apao was residing on the property.

On July 25, 2011, the Mounts initiated an ejectment action in District Court in an effort to obtain possession of the Property.  On August 4, 2011, at the return date in the District Court ejectment action, the Mounts learned for the first time that the Estate of Alvaro would be challenging U.S. Bank's foreclosure on the Property.  The District Court action was subsequently dismissed given the Apaos' challenge to the nonjudicial foreclosure and title to the property, and the Mounts refiled their ejectment action in the Circuit Court.

After the initial litigation in Circuit Court, the first appeal, and on remand after Mount I, the Mounts' Motion for Summary Judgment was supported by their affidavits on the question of whether they were bona fide purchasers.  In his affidavit, Gerald Mount attests that "[f]rom the time when I first learned about the Property to the time when the Warranty Deed was recorded, I was not aware of any challenges to, or any actual or alleged problems with, U.S. Bank's foreclosure."  In her affidavit, Jane Mount similarly attests that from the time she learned about the Property to the time the Limited Warranty Deed was recorded, she "was not aware of any challenges to, or any actual or alleged problems with U.S. Bank's foreclosure." The Apaos provide no contrary evidence indicating that the Mounts had knowledge of any challenges to, or any alleged problems with, the foreclosure.

On March 14, 2017, during the remand, the Circuit Court issued the Order Granting Renewed Motion For Summary Judgment, in which, *inter alia*, the Circuit Court determined the $1.2 million paid by the Mounts was "valuable consideration," that the Mounts "did not know, and had no reason to know, about any problems in the foreclosure process," and that the Mounts could not have had knowledge of the Estate's claims against U.S. Bank related to the

"foreclosure because the Estate did not assert any claims until after the Mounts acquired title to the Property."  The Circuit Court thus held that the Mounts were innocent or bona fide purchasers because they purchased the Property for valuable consideration and they had no actual or constructive knowledge of any defect in the foreclosure process.  On May 5, 2017, the Circuit Court entered the HRCP Rule 54(b) Judgment.

The Apaos timely appealed.

## II.  Standard of Review

> On appeal, the grant or denial of summary judgment is reviewed de novo.  See State ex rel. Anzai v. City and County of Honolulu, 99 Hawaiʻi 508, [515], 57 P.3d 433, [440] (2002); Bitney v. Honolulu Police Dep't, 96 Hawaiʻi 243, 250, 30 P.3d 257, 264 (2001).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

> Kahale v. City and County of Honolulu, 104 Hawaiʻi 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawaiʻi 90, 96, 194 P.3d 531, 537 (2008); see also First Ins. Co. of Hawaii v. A&B Props., 126 Hawaiʻi 406, 413-14, 271 P.3d 1165, 1172-73 (2012).

## III.  Discussion

The Hawaiʻi Supreme Court has stated that "[a]n innocent purchaser is one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller."  Kaʻu Agribusiness Co., Inc. v. Heirs or Assigns of Ahulau, 105 Hawaiʻi 182, 193, 95 P.3d 613, 624 (2004) (citations and internal quotation marks omitted).  Further, "[a] non-bona

6

fide purchaser is one who does not pay adequate consideration, takes with knowledge that his transferor acquired title by fraud[,] or ... buys registered land with full notice of the fact that it is in litigation between the transferor and a third party." Kondaur Capital Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 240 n.27, 361 P.3d 454, 467 n.27 (2015) (citations and internal quotation marks omitted)).

There is no dispute that the Mounts paid an adequate consideration for the Property.  The affidavits submitted by the Mounts in support of their renewed motion for summary judgment establish that the nonjudicial foreclosure auction for the Property was held on April 4, 2011, both of the Mounts attended to bid via their company Fair Horizon, multiple other parties bid on the Property, there were about fifteen to twenty bids between the participating parties, and Fair Horizon prevailed with a bid of $1.21 million.  The Apaos did not submit any evidence to contradict the Mounts' evidence about the auction, the prevailing bid price, or to challenge in any manner that the amount paid by the Mounts was inadequate.  Thus, the Mounts established that the amount they paid was based on a winning bid at a competitive auction for the Property, and that the amount was adequate consideration.

Further, the Apaos provide no evidence and do not dispute that, prior to the Mounts acquiring title to the Property, the Mounts had no actual knowledge of any problem with, or challenge to, the foreclosure by U.S. Bank.

Rather, the Apaos base their appeal on two arguments: (1) that the Mounts had constructive knowledge of the Apaos' claims based on the Estate of Alvaro's possession of the property; and (2) that the Mounts, as sophisticated property investors, had a heightened duty of inquiry.

**A.    The Estate's Possession of the Property Was Not Constructive Notice of its Claim Against the Foreclosure**

The Apaos cite Achi v. Kauwa, 5 Haw. 298 (Haw. Kingdom 1885) for the proposition that a purchaser of land takes his title subject to the claims of parties in possession, and the

possession is constructive notice to the purchaser of all the rights of the possessor.  <u>Achi</u>, however, is distinguishable. There, the plaintiff's interest in the subject property was through a grant under a recorded deed.  The defendants claimed rights under an <u>unrecorded deed</u> and showed that some defendants lived on and were supported by the land, cultivated and fenced part of the land, and had two houses on the land that had stood for a long time.  <u>Id.</u> at 298.  The plaintiff claimed the unrecorded deed was void under a statute that provided such unrecorded deed "shall be void against any subsequent purchaser in good faith and for a valuable consideration not having actual notice of such conveyance, whose conveyance shall be first duly recorded."  <u>Id.</u>  The <u>Achi</u> court rejected the plaintiff's argument, holding that:

> In equity and at common law without reference to special statutes; and, it seems to us, upon reason; good faith requires a purchaser of land to take his title subject to the claims of parties in possession when he buys[.]  Under our statute, if the party in open possession is unable to show actual notice of his <u>unregistered deed</u> to a subsequent purchaser, his possession is constructive notice to such purchaser of all his rights, and he cannot be disturbed therein.

<u>Id.</u> at 299.  Whereas <u>Achi</u> involved the defendants' claims under an unrecorded deed, in the instant case there are no competing deeds related to the subject property.  Rather, the Mounts obtained title through the nonjudicial foreclosure due to the default on the mortgage by the Estate.

The other cases cited by the Apaos also do not support their position because those other cases involve circumstances quite different than this case.  <u>See</u> <u>Yee Hop v. Young Sak Cho</u>, 25 Haw. 494, 505, 506 (Haw. Terr. 1920) (recognizing general rule that "where a party purchases or leases real estate <u>in the possession of another not his vendor or lessor</u> he is chargeable with knowledge of all the rights of the party in possession" and holding that where petitioners were in open possession of fish and vegetable stalls under oral agreements, the respondents who recently leased the premises had a "duty to make reasonable inquiry as to the rights of the persons in possession and if they

8

failed to do so they cannot be deemed to be purchasers in good faith for value") (emphasis added); <u>In re Probasco</u>, 839 F.2d 1352, 1354 (9th Cir. 1988) (under California law "a bona fide purchaser who records prevails over a <u>prior transferee who failed to record</u>") (emphasis added); <u>Natural Resources, Inc. v. Wineberg</u>, 349 F.2d 685, 688-90 (9th Cir. 1965) (where deed conveying property to plaintiff was executed first, but recorded after a deed conveying the same property to the defendants, the plaintiff's open possession of the property gave notice to the defendants of plaintiff's interest in the property); <u>Maniq v. Bachman</u>, 273 P.2d 596, 599-601 (Cal. Dist. Ct. App. 1954) (holding that defendant, who obtained title through plaintiff's son while plaintiff's son held record title, was under a duty to inquire about the plaintiff's rights to the subject property under an unrecorded deed where the plaintiff's tenants were in actual possession of the property long before and at the time defendant acquired title).

Here, there was no unrecorded transfer or unrecorded lease of the property, like in the cases cited by the Apaos. Rather, the Estate of Alvaro held title to the Property until the Property was sold at the nonjudicial foreclosure auction, the Mounts obtained their title from that nonjudicial foreclosure auction, and the Estate was not required to vacate the property until it was divested of title as a result of that nonjudicial foreclosure.  Thus, the cases cited by the Apaos are inapposite.

A purchaser does not have a duty to inquire regarding any unknown claims or interests by a person in possession of real property where the occupant's possession is <u>consistent</u> with the recorded title on the property.  In <u>Schumacher v. Truman</u>, 134 Cal. 430, 66 P. 591 (1901), the California Supreme Court expressed:

> The rule that one who purchases land, which is not at the time in the possession of his vendor, takes the same in subordination to the rights of another who is in its actual possession, is subject to the qualification that such actual possession must not only be open and notorious, but also that it be exclusive, and <u>inconsistent with the record title</u>.  Such possession is not, of itself, notice, but merely evidence tending to prove notice sufficient to put

> the purchaser on inquiry; and <u>inquiry does not become a duty when the apparent possession is consistent with the title appearing of record</u>.  What makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell.  <u>The rule is universal, that if the possession be consistent with the recorded title, it is no notice of an unrecorded title</u>.  If the actual possession is consistent with the record title, it will be presumed to be under that title and referable thereto.

<u>Id.</u> at 432, 66 P. at 592 (citations and internal quotation marks omitted) (emphases added); <u>see also</u> <u>In re Weisman</u>, 5 F.3d 417, 421 (9th Cir. 1993) ("There is no duty to inquire upon a subsequent purchaser regarding any unknown claims or interests by a person in possession of real property where the occupant's possession is consistent with the record title") (footnote omitted); <u>In re Whiting</u>, 311 B.R. 539, 545 (2004) ("A prudent purchaser is required to make an inquiry as to another's interest in property *only when the possession of the property is inconsistent with the record title*") (italics in original); <u>First Nat. Bank v. Brown</u>, 240 N.W. 381, 384 (Wis. 1932) ("Possession to operate as notice, should be inconsistent with the title upon which the purchaser relies.  If the possession is consistent with the record title, the purchaser is not bound to make any inquiry concerning the title as indicated by the possession.") (citing 5 Thompson, Real Property, p.338, § 4251);[3] 11 David A. Thomas, <u>Thompson on Real Property</u> 192-93, § 92.09(c)(3)(A) (2015) ("Generally, no inquiry need be made of those in possession along with the record owner.") (footnote omitted).

Here, the parties agree that the Estate remained in possession of the property at the time the Mounts purchased it. There is no evidence of any effort to have the Estate vacate the Property until the ejectment action was filed by the Mounts in District Court.  The Estate's possession of the property until the Limited Warranty Deed was recorded on July 22, 2011, transferring the property to the Mounts, was consistent with the

---

[3]  <u>See also</u>, 8 Thompson on Real Property 517, § 4337 (George W. Thompson, ed. 1963 Repl.).

Estate's rights and did not provide constructive notice to the Mounts that the Estate would challenge U.S. Bank's foreclosure.

**B.**   **Hawaiʻi Has Not Recognized a Heightened Inquiry Duty for Sophisticated Property Purchasers and No Amount of Inquiry Could Have Uncovered a Claim that the Apaos Had Not Asserted**

The Apaos cite a Washington case for the proposition that, because the Mounts have purchased at least eight properties at foreclosure auctions, they are sophisticated property investors with a heightened duty of inquiry.  See Albice v. Premier Mortg. Servs. of Wash., Inc., 276 P.3d 1277 (Wash. 2012). The Apaos claim that, had the Mounts not failed at their duty of inquiry, they would have uncovered that "the Estate continued to possess the [P]roperty, that the property was subject to ongoing probate proceedings in Circuit Court, and that the Estate disputed the wrongful nonjudicial foreclosure."

Notably, the Apaos cite no Hawaiʻi case law imposing such a heightened duty on so-called sophisticated property investors, and we find none.  Albice is not binding and is also distinguishable.  In Albice, the court held that, because real estate investment was the purchaser's livelihood, on the facts of that case, the purchaser should have inquired further, which would have uncovered a forbearance agreement between the owner and the lender.  Id. at 1285.  Here, the Limited Warranty Deed transferring title to the Mounts was recorded on July 22, 2011, and only after the Mounts initiated the subsequent District Court ejectment action did the Mounts learn that the Estate of Alvaro would challenge the U.S. Bank foreclosure.  The Estate legally possessed the property until the foreclosure sale closed, and the Mounts took the affirmative action to obtain and review the preliminary title report, through which they learned about the probate proceedings.  The Mounts then had an attorney review the documents filed in the probate proceedings, none of which indicated any challenge to, or problem with, the foreclosure. Thus, the Mounts uncovered the relevant information regarding the Property that was available at the time.

The record further reflects that prior to the Mounts taking title, the Estate and the Apaos did not take any action such as filing a restraining order, a *lis pendens*, or any other action, that could have provided notice to the Mounts or others that the Estate or the Apaos would challenge U.S. Bank's foreclosure on the Property.

### IV.  Conclusion

For the reasons set forth above, the HRCP Rule 54(b) Judgment entered on May 5, 2017, by the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, March 12, 2021.

On the briefs:

Gary V. Dubin,
Frederick J. Arensmeyer,
for Margaret Apao and
Dirk Apao.

Michael C. Bird,
Summer H. Kaiawe,
for Gerald K. Mount, Jr.
and Jane R. Mount.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Gary W.B. Chang
Circuit Court Judge

/s/ Robert D.S. Kim
Circuit Court Judge