**In re Mark A. JAROSZ and Tammi L. Jarosz, Debtors.**

**Glenn O. Givens, Jr., Trustee, Plaintiff,**

**v.**

**Countrywide Home Loans, Inc., et al., Defendants.**

**Bankruptcy No. 03–22102–SVK.
Adversary No. 04–2020.**

United States Bankruptcy Court,
E.D. Wisconsin.

March 28, 2005.

Home Loans, Inc. ("Countrywide") disputes that the mortgage is avoidable by the Trustee, mainly because the mortgage is not enforceable under Wisconsin law.

## PROCEDURAL BACKGROUND

The procedural history of this adversary proceeding is mistake-ridden, convoluted and unfortunately relevant. The Trustee filed his complaint on January 15, 2004, naming Countrywide Home Loans, Inc. as the sole Defendant. The title of the complaint is: "Complaint to Recover a Preferential Payment Pursuant to § 547 of the Bankruptcy Code, to Determine the Validity, Priority or Extent of Lien or Other Encumbrance Pursuant to §§ 544, 546 and 550 of the Bankruptcy Code and Recover of All Pre–Petition and Post–Petition Payments Made by Debtor to Defendant Pursuant to § 547 of the Bankruptcy Code." [1] The summons was issued and dated February 2, 2004, and scheduled a pretrial conference for March 8, 2004. According to the certificate of service, the Trustee served the complaint on February 3, 2004 by first class mail on "Attn. Officer or Managing Agent, Countrywide Home Loans, Inc., P.O. Box 10423, Van Nuys, CA 91401–0423." A copy of the envelope that was used to mail the original summons and complaint was filed with the court. The last line of the envelope contains no spaces between the state and the zip code: "VAN NUYS, CA91401–0423." No answer was filed to the complaint, and no appearance was made by Countrywide. However, at the pretrial conference, the Trustee requested an adjournment to add another defendant to the lawsuit. On March 9, 2004, an amended summons was issued. The amended summons names

Curtis R. Czachor, Green Bay, WI, for Debtors.

Glenn O. Givens, Jr., Milwaukee, WI, pro se.

## MEMORANDUM DECISION

SUSAN V. KELLEY, Bankruptcy Judge.

The bankruptcy trustee filed this adversary proceeding to avoid a mortgage, because the mortgage note signed by the Debtors was dated December 18, 2002, but the mortgage was not recorded until January 17, 2003, more than ten days after the note was executed and within 90 days of the Debtors' bankruptcy petition. The Trustee claims that the tardy recordation of the mortgage is an avoidable preference under Bankruptcy Code § 547(b). 11 U.S.C. § 547(b) (2004). Countrywide

1. Although the caption of the complaint seeks avoidance of the mortgage under theories other than Bankruptcy Code § 547, the body of the complaint only includes claims under the preference section, and the Trustee never argued that he should be able to avoid the mortgage under § 544, the "strong-arm" powers.

two defendants, Countrywide Home Loans, Inc. (the original defendant) and "Countrywide Home Loanss (sic) America's Wholesale Lender." The amended complaint is identical to the original complaint, but the caption adds the defendant: "Countrywide Home Loan (sic) America's Wholesale Lender," and the body of the amended complaint adds the following defendant "Countrywide Home Loans, Inc. America's Whole Sale (sic) Lender, 4500 Park Granada, Calabas, CA 91302." Both defendants will be referred to as "Countrywide" in this decision.

The certificate of service for the amended complaint contains 4 pages. The first page is the amended summons itself. Someone has crossed off the date of the amended summons (March 9, 2004) and written in April 2, 2004. The court's time stamp, showing the March 9, 2004 date the original amended summons was filed also is crossed out. The second, third and fourth pages of the certificate of service state that the amended summons and amended complaint were served by first class mail on March 10, 2004 on "Countrywide Home Loans, Inc.—Attn: Officer or Managing Agent, P.O. Box 10423, Van Nuys, CA 91401," "Countrywide Home Loans Attn: Officer or Managing Agent, America's Wholesale Lender, 4500 Park Greneda, Calabas, CA 91302," and "Countrywide Home Loans, Inc. c/o The Prentice Hall Corporation System, Inc., Registered Agent, 25 West Main Street, Madison, WI 53703."

At the adjourned pretrial conference on April 21, 2004, no appearance was made by the defendants, and the court scheduled a hearing on the Trustee's oral request for a default judgment for May 21, 2004. A notice of the prove-up hearing was prepared and sent by the court to the Trustee

and to Countrywide, at the addresses contained in the certificate of service on the amended complaint.[2] On May 17, 2004, the Trustee filed a "Motion for Default Judgment Against Countrywide Mortgage, America's Wholesale Lender." The court issued a new notice of hearing on this Motion, scheduling the hearing for June 10, 2004. According to his certificate of service, the Trustee served his motion for default judgment on a local attorney for Countrywide. Actually, the certificate of service does not contain a full address for the attorney—the city and state are missing from the entry—but on June 1, 2004, the local attorney filed an answer on behalf of Countrywide. That answer did not challenge or mention the apparent defects in the service of the complaint and amended complaint.

At the default judgment hearing on June 10, 2004, counsel for both the Trustee and Countrywide appeared, indicated they were trying to settle the matter, and requested an adjournment. The hearing was adjourned to July 14, 2004, at which time the same counsel appeared and requested another continuance. Anticipating that the case would settle, the court granted the adjournment, and re-scheduled the hearing on the motion for default judgment to September 22, 2004. At that hearing, the attorney for Countrywide did not appear. The Trustee stated that the parties were unable to settle; he presented his certificates of service on the amended complaint, and a copy of the recorded mortgage, showing on its face that the mortgage was recorded more than 10 days after the date of the note. The Trustee also presented a proposed order, which not only avoided the preferential mortgage, but ordered Countrywide to return all of the payments received on the mortgage in

---

**2.** The court did not mail the notice to the registered agent, Prentice Hall, and the court's notice contained a clerical error in the "Calabasas" address for Countrywide.

the preference period and after the petition. The court indicated that the order would not be signed as presented, and asked the Trustee to prepare and submit another order, simply avoiding the mortgage as a preference.

The court had received, but not signed, the revised order for default judgment when Countrywide's attorney filed a motion to reconsider, due to excusable neglect in not appearing at the prior hearing. The motion to reconsider was filed immediately upon the attorney's receipt of the proposed order granting the default judgment. At the hearing on the motion to reconsider, Countrywide's attorney admitted that service of the complaint and amended complaint was proper, but, still sincerely believing that settlement of the case might be possible, asked for more time to address the merits of the case. The court found excusable neglect in the failure of counsel to appear at the September 22, 2004 hearing, but given the admission that service was proper and the answer was filed late, did not set aside the entry of the default against Countrywide. Again hoping that a settlement would be facilitated, Countrywide was given one last opportunity to challenge the Trustee's entitlement to entry of a judgment by default; Countrywide was required to request a prove-up hearing within 14 days, or suffer the entry of the default judgment proposed by the Trustee. Within the deadline set by the court, on October 19, 2004, Countrywide's counsel requested a hearing "at which the plaintiff is to prove and establish by *prima facia* (sic) evidence that he is entitled to judgment in accordance with the demands of the pleadings." This hearing was scheduled for November 8, 2004.

On November 8, 2004, Countrywide filed an amended answer to the amended complaint and a response to the motion for default judgment. The response indicated that service of the complaint and amended complaint was defective, and that Countrywide had never received any of the process in this case. The zip code for Countrywide's Van Nuys office was wrong, the street address for the other California office was wrong, and the name of the town is actually Calabasas, not Calabas. While admitting that the Prentice Hall address was correct, Countrywide's response stated that Prentice Hall had no record of receipt of the amended summons and complaint. As to the merits, Countrywide argued that the doctrine of equitable subrogation should be applied to allow Countrywide to step into the shoes of the mortgagees that Countrywide paid off. Also, Countrywide challenged the Trustee's *prima facie* case, contending that the loan may have been funded after December 18, 2003, and thus, the mortgage recorded within the safe harbor provisions of the Bankruptcy Code.

At the hearing on November 8, 2004, counsel for both parties appeared with various documents. No witnesses, declarations or affidavits were presented, other than the affidavit attached to the response from Countrywide's "national defense counsel" concerning service of process issues. Countrywide disputed that the Trustee's service of the complaint and amended complaint was adequate, and also challenged the Trustee's evidence as inadmissible hearsay. The Trustee in turn argued that Countrywide's evidence should not be considered, as having been filed too late and also as not admissible in evidence. Declining to rule on the motion for default judgment without the benefit of testimony to authenticate the documents, the court scheduled a final prove-up hearing for December 10, 2004, and directed the parties to exchange lists of witnesses and copies of exhibits at least ten days prior to that date.

A status conference was requested by Countrywide and held on December 1, 2004. At that time, Countrywide's counsel stated that new evidence had been unearthed that Tammi Jarosz did not sign the mortgage. Countrywide requested an adjournment to further consider this new evidence. This request was denied. The prove-up hearing was held as scheduled on December 10, 2004, and was limited to the issue of whether the Trustee had met his burden of proving a *prima facie* case of an avoidable preference under § 547(b) of the Bankruptcy Code.

## EVIDENCE ADDUCED AT THE HEARING

At the hearing, the Trustee presented evidence including a promissory note dated December 18, 2002, signed by Mark A. Jarosz. Mr. Jarosz testified that the signature on the Note was his signature, and that he believed he signed the Note on December 18, 2002. He also testified that the certified copy of the mortgage (Trustee's Exhibit A) "appears to be the mortgage that we had signed." He could not remember whether his wife signed the mortgage, although he testified that she was present at the closing, and consented to the mortgage. After being shown what purported to be his wife's signature on the mortgage, Mr. Jarosz could not authenticate her signature. The Trustee never specifically asked Mr. Jarosz to verify his own signature on the mortgage (Trustee's Exhibit A), although Mr. Jarosz testified that the signature on the closing statement was his signature. Mr. Jarosz also stated that he only signed documents on one occasion, presumably December 18, 2002.

Countrywide introduced two copies of the mortgage: CHL Exhibit 2 and CHL Exhibit 4. Exhibit 2 is an unrecorded copy of the mortgage, containing the signature of Mr. Jarosz, but not Mrs. Jarosz. The signature page, like the rest of the document, is on "legal size" paper. Exhibit 4 is the original of the mortgage, as recorded. As such, CHL Exhibit 4 is the original of the Trustee's Exhibit A. Exhibit 4 is also identical to Exhibit 2, with the exception of the signature page and the notary's acknowledgment. The signature page on Exhibit 4 contains original signatures of both Mr. and Mrs. Jarosz, on 8½ by 11 inch paper, and includes some facsimile numbers across the top. Under cross-examination, Mr. Jarosz testified that the signature on CHL Exhibit 2 (unrecorded mortgage not signed by Mrs. Jarosz) was his signature, but the signature on CHL Exhibit 4 (recorded mortgage signed by Mrs. Jarosz, identical to Trustee's Exhibit A) was *not* his signature.

Mrs. Jarosz testified that she attended the closing on December 18, 2002, but she was not required to sign all of the documents because she did not have an income at that time. She recalled signing documents authorizing her husband to become obligated on the loan and to "put a lien against the house." She did not specifically remember signing the mortgage, although she testified that her signature was indeed contained on the recorded copy of mortgage (Exhibit 4). She testified that the signature on the closing statement did not appear to be her signature. She also was clear in her testimony that she only signed documents on one day: December 18, 2002. She could not explain how the facsimile date of December 23, 2002 appeared on the original signature page which she would have signed on December 18, 2002.

Peggy Acklam, the notary public who notarized the signatures on the mortgage, also testified. Her official position with K & M Title Company, who handled this transaction, was "examiner of closing." The notary certificate on the unrecorded

mortgage states that it was "acknowledged before me this 18[th] day of December 2002 by Mark A. Jarosz, a married man." On the recorded mortgage, the words, "married to Tammi L. Jarosz," have been added to the acknowledgment. Despite Ms. Acklam's acknowledgments, she testified that she was not present at the time Mark Jarosz and Tammi Jarosz signed the mortgage. Rather, she notarized the document after receiving confirmation of the identity of the signing parties in the form of a copy of a driver's license or a verification form signed by the mortgage broker. Remarkably, according to Ms. Acklam, at K & M Title Company, notarizing based on a photocopy of the driver's license was far more common than having the signatory actually appear in front of the notary.

As examiner of closing, Ms. Acklam conducted the funding on this loan on December 31, 2002. She was aware of a defect in the mortgage, in that the original mortgage did not contain Mrs. Jarosz's signature. On January 6, 2003, she received a received a facsimile stating that Countrywide could not retrieve the original signed mortgage from its corporate office. The fax suggested that Ms. Acklam obtain new signatures from Mr. and Mrs. Jarosz. CHL Exhibit 52 is a blank signature page from the mortgage. It is apparent that Mr. Jarosz's signature has been deleted, and the printed name of Tammi L. Jarosz has been added under the second signature line. The "white-out" of Mr. Jarosz's name is not totally complete; portions of the signature remain. On January 7, 2003, Ms. Acklam transmitted the new blank signature page to GSF Mortgage Corporation, the mortgage broker, requesting that the Debtors needed to sign the signature page "one more time and return to me."

The custodian of the records of K & M Title Company was called as a witness. Although he could not testify as to when the "corrected" signature page was received, he stated that it was sent for recording by two-day delivery service on January 15, 2003. The Brown County Register of Deeds stamped the mortgage as received on January 17, 2003, and the Debtors filed their bankruptcy petition February 18, 2003.

## DISCUSSION

### 1. Improper Service of the Complaint and Amended Complaint.

■ Countrywide argued in its Response to the Motion for Default Judgment and at the November 8, 2004 hearing that the service of the complaint and amended complaint was improper, and, therefore the late answer should be excused and the entry of default vacated. Bankruptcy Rule 7012(b) adopts Federal Rule of Civil Procedure 12(b)(4), (b)(5) and (h) in adversary proceedings. Rule 12(b)(4) and (5) governs challenges to the service of process in a bankruptcy adversary proceeding. Rule 12(h)(1) requires that a Rule 12(b)(4) or (5) challenge must be made in the first Rule 12 motion or the first responsive pleading filed by a party, or it is deemed waived. *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 874 (3d Cir.1944) ("If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express terms of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules."). In this case, Countrywide answered the complaint on June 1, 2004, and did not raise the defects in the service of the complaint or amended complaint. Default was entered on September 2, 2004, and at the October 6, 2004 hearing on the motion to reconsider the entry of default, Coun-

trywide's attorney admitted that the addresses used by the Trustee were "valid" and "fine for service." [3] Under these circumstances, Countrywide has waived the argument that the service of the complaint and amended complaint was ineffective.

### 2. Effect of Entry of Default.

■ Because Countrywide failed to timely answer the complaint and amended complaint, default was entered pursuant to Bankruptcy Rule 7055. However, entry of default does not automatically entitle a plaintiff to a default judgment. *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 713 (Bankr.E.D.Wis.2003). *See* 10 *Moore's Federal Practice and Procedure—Civil* § 55.20 ("Even when a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right."). Whether a default judgment should be entered is within the broad discretion of the court, and it may conduct hearings and receive evidence it deems proper before a default judgment is entered. *Trevisan*, 300 B.R. at 713–14.

■ Generally, when default is entered, the defaulting party loses standing to contest the truth of the facts alleged in the complaint. 10 *Moore's Federal Practice—Civil* § 55.12. But a party may challenge the *sufficiency* of the facts alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir.1994) (entry of default does not preclude a party from challenging the sufficiency of the complaint). *See Boonville Convalescent Center, Inc. v. Sherwood Healthcare Corp.*, 2004 WL 1629512, at *3, 2004 U.S. Dist. LEXIS 13969, at *10 (S.D.Ind. May 18, 2004) (citing *Black*, noting that a Fed.R.Civ.P. 12(b)(6) analysis is necessary prior to entry of a default judgment). Therefore, at the December 10, 2004 hearing, the Trustee was required to

prove all the elements of a *prima facie* case under Bankruptcy Code § 547(b), and Countrywide was limited to challenging whether all the elements of § 547(b) were met. Defenses which may have been available were foreclosed by Countrywide's failure to timely answer the complaint.

### 3. Elements of a Preference.

■ For our purposes, the elements of an avoidable preference are: 1) a transfer of property of the debtor; 2) within 90 days of bankruptcy; 3) to or for the benefit of a creditor; 4) on account of an antecedent debt; 5) while the debtor is insolvent; and 6) with the effect of giving the creditor a greater return on its claim than would have been received in a chapter 7 proceeding if the transfer had not been made. *Swanson v. Montello State Bank (In re Hill)*, 210 B.R. 1016, 1020 (Bankr. E.D.Wis.1997). The Trustee's proof of the third through sixth elements cannot be seriously disputed. Although the first two elements are rarely in doubt, the issue here is precisely whether the Debtors made a transfer within 90 days of their bankruptcy petition.

### 4. Did Countrywide receive a Transfer from the Debtors.

■ "Transfer" is defined in the Bankruptcy Code as:

... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. § 101(54). This definition "is as broad as possible," thereby making any transfer of an interest in property a

---

**3.** Countrywide raised the defense in its amended answer; however, no motion to allow the amended answer was ever filed, as required by F.R.Civ.P. 15(a).

"transfer" for avoidance purposes. 5 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy—15th Rev. Ed.* ¶ 547.03[1] (2005). Under this comprehensive definition, "any conceivable type of transfer may be avoided if the other requirements of § 547(b) are met." *Id.* at ¶ 547.03[1][a].

■■■■ The "transfer" also has to be of "an interest of the debtor in property." 11 U.S.C. § 547(b). This language has been interpreted to mean property "that would have been part of the estate had it not been transferred before the commencement of [the] bankruptcy proceedings." 5 Resnick and Sommer, *supra,* at ¶ 547.03[2]. "The fundamental inquiry is whether the transfer diminished or depleted the debtor's estate." *Id.*

■■■■ A granting of a mortgage in real property has generally been held to be a "transfer of an interest of the debtor in property" under § 547(b). *E.g., Gold v. Interstate Financial Corp. (In re Schmiel),* 319 B.R. 520, 524 (Bankr. E.D.Mich.2005) (finding a "transfer" for § 547(b) purposes when the debtors granted a creditor a mortgage on real property owned by them); *Kepler v. Steele (In re Steele),* 27 B.R. 474, 478 (Bankr.W.D.Wis. 1983) ("There can be no dispute that the giving of a mortgage constitutes a 'transfer' [under § 547(b)]."). This transfer can be avoided by the trustee if the mortgage is not promptly recorded after the creditor advances the loan secured by the mortgage. *See, e.g., In re Chicora Group,* 99 B.R. 715, 717 (Bankr.D.S.C.1988) (finding mortgage deemed to have occurred on the date of perfection, which was within ninety days of the debtor filing for bankruptcy relief, and therefore avoidable under § 547(b)).

■■■■ In the instant case, the Trustee claims that a transfer occurred when Countrywide recorded its mortgage on January 17, 2003, and that the mortgage is

avoidable because the debt secured by the mortgage was incurred when the promissory note was signed on December 18, 2002. Countrywide counters that the recording of the mortgage is not an avoidable transfer, because the mortgage was not valid under Wisconsin law, as either containing forged or unauthenticated signatures. In short, Countrywide argues that a "transfer" under § 547(b) means a transfer that is valid under applicable non-bankruptcy law. Countrywide argues: "The mortgage in question is void and creates no lien on the property. The trustee has failed to establish the first element of his *prima facie* case for lien avoidance—the validity of the mortgage."

The only case cited by Countrywide in support of this proposition is *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), but *Butner* deals with interests in property for bankruptcy estate purposes. Nowhere does *Butner* discuss the meaning of "transfer" under § 547(b). As noted above, the definition of transfer is found in the Bankruptcy Code itself, and is extremely broad. Although irregularities in the mortgage abound, can it be doubted that the Debtors here parted with an interest in property when the mortgage was recorded? They testified that they wanted to refinance their existing mortgages, and they both understood that they were granting a lien on their house. They scheduled Countrywide as a secured creditor in their bankruptcy schedules. They made payments on the mortgage, before and after they filed bankruptcy. A title search of the property revealed the mortgage, and it was only after months of investigation that the allegations concerning the forgery of one or both signatures on the mortgage came to light. All of the Debtors' actions indicate an intent and understanding of granting a mortgage lien on their residence. That the cause for the

late recording of the mortgage was that someone (presumably the loan broker or title company, not the Debtors) was doctoring the signatures, should not insulate this transaction from preference attack.

Moreover, Bankruptcy Code § 547(e)(2)(c) suggests that a transfer that is invalid under state law may still qualify as a preference. That section defines when a transfer of real estate is deemed made, and provides that if a transfer is unperfected on the petition date, it will be deemed made immediately before the date of the petition. An unperfected transfer of real estate, under § 547(e)(1)(A), is a transfer that can be defeated by a bona fide purchaser of the property. Since a bona fide purchaser could defeat a mortgage that is not signed by both spouses under Wisconsin law, See, e.g., State Bank of Drummond v. Christophersen, it follows that such a mortgage would be unperfected as defined by § 547(e)(1)(A) and made under § 547(e)(2)(c) immediately before the filing of the petition. 93 Wis.2d 148, 158, 286 N.W.2d 547 (Wis.1980). Since an unperfected transfer can "made" under the preference statute, it follows that validity under state law is not a pre-requisite to the definition of preferential transfer.

The court's research unearthed two cases under the old Bankruptcy Act holding the opposite of Countrywide's argument to be true: that regardless of whether the transfers themselves were void or invalid under non-bankruptcy law, the transfers were still avoidable as preferences. In Fischer v. Liberty Nat'l Bank & Trust Co., the debtor assigned future income to a creditor on the eve of bankruptcy. 61 F.2d 757 (2d Cir.1932). The transfer was invalid under non-bankruptcy law that prohibited a public official from assigning future compensation. The Second Circuit held that while the "transfers, invalid and thus worthless when first made,

were nevertheless preferences that could be set aside by the trustee." Id. at 759–60.

G.F. Wertime, Inc. v. Turchick, following Fischer, also held that a transfer, though invalid under non-bankruptcy law, was an avoidable preference under the Bankruptcy Act. 358 F.2d 802, 811 (2d Cir.1966). There, a mortgage was executed on property of the majority shareholder to his corporation for no consideration. When the bankruptcy trustee attempted to set aside the transfer as a preference, the creditor argued there was no transfer since the underlying mortgage was invalid under New York law. Rejecting the creditor's argument, the court stated that while invalid, a transfer did nonetheless occur when the mortgage was subsequently recorded, and noted that "any other result... would violate common sense." Id. at 810–811.

Similarly in this case, adopting Countrywide's argument violates common sense. To agree that Countrywide did not receive a transfer when the mortgage was recorded because Countrywide's title insurer or mortgage broker inserted one or more signatures into the mortgage, misrepresented the date the mortgage was signed and then "fudged" the notary acknowledgment defies logic. In light of (1) the broad definition of transfer; (2) the provision of a date for unperfected transfers in § 547(e); (3) the absence of relevant authority to the contrary; and (4) the precedent under the old Bankruptcy Act, this court concludes that the recordation of the invalid mortgage constituted a transfer of the Debtors' interest in property under § 547(b) of the Bankruptcy Code.

### 5. Did the Transfer Occur within 90 days of the Bankruptcy Petition.

This remaining disputed element of a preferential transfer is met in this case if

the transfer was "made" within 90 days of the bankruptcy petition date. Section 547(e)(2) determines when a transfer is "made," and states in pertinent part:

(e)(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made-

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2). Section 547(e)(1)(A) addresses when perfection occurs with respect to real property:

(e)(1) For the purposes of this section—

(A) a transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1)(A).

 In Wisconsin, perfection occurs upon recording. *See* Wis. Stat. § 706.08(1)(a) (2004) ("Except for patents issued by the United States or this state . . . every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.").

In the instant case, the Trustee produced a certified copy of the mortgage that was filed with the Brown County Register of Deeds on January 17, 2003. This date clearly is within 90 days of the February 18, 2003 petition date.

Countrywide contends that § 547(e)(2) does not apply to transfers of real property, and argues that only § 547(e)(1)(A) applies to real property transfers. Countrywide goes so far as to state that if (e)(2)(A) is applied "across the board to all transfers, (e)(1)(A) is never applicable." Countrywide concludes that because the mortgage was recorded on January 17, 2003, the security interest was properly perfected against a bona fide purchaser for value, and therefore the Trustee cannot claim bona fide purchaser status.

 This claim completely misconstrues the preference statute. Section 547(b)(4) requires the transfer be "made" within 90 days of the petition, or one year for an insider. Subsection (e)(2) provides the baseline for determining when a transfer is "made," and requires reference to when a transfer was "perfected." And "perfection" of an interest in real property is dealt with in subsection (e)(1)(A). Again, Countrywide cites no cases for its novel interpretation of the preference statute, although some legislative history is provided, with references to the Uniform Commercial Code. This court finds the statute clear on its face, making reference to the legislative history unnecessary. *Indiana Port Com. v. Bethlehem Steel Corp.,* 835 F.2d 1207, 1210 (7th Cir.1987) ("If the plain language of the statute is clear, we do not look beyond those words

to interpret the statute."). Applying the statute in this case compels the conclusion that the transfer was made within 90 days of the Debtor's petition. Either the transfer was made on January 17, 2003 when the mortgage was recorded, or, under Bankruptcy Code § 547(e)(2)(c), the transfer was not effective against a bona fide purchaser due to the defects in the mortgage, and is deemed to be made immediately before the date of the petition.

■ Moreover, this transaction is not saved by the ten-day grace period of Bankruptcy Code § 547(e)(2)(A). That section allows a transfer to be deemed made for preference purposes on the date the transfer takes effect between the debtor and creditor, provided the transfer is perfected within ten days thereafter. Countrywide argues to no avail that the transfer did not take effect until the new blank signature page was completed sometime after January 7, 2003. Countrywide ignores that the Note is dated December 18, 2002, the loan was funded December 31, 2002, and all of the documents indicate that the closing occurred and the transfer took effect on December 18, 2002. All of these dates are more than 10 days prior to the recordation of the mortgage on January 17, 2003.

■ In summary, the Trustee has proven, and Countrywide has failed to successfully rebut, the elements of an avoidable preferential transfer under Section 547 of the Bankruptcy Code. One final argument needs to be addressed. Countrywide argues in a footnote that lien avoidance and automatic preservation of liens under Bankruptcy Code § 551 do not remove defects in the lien under state law, and that "The trustee inherits the position of the entity whose lien was avoided." While Countrywide may be correct that the Trustee would only step into the appropriate priority position of the avoided lien, the implication that the Trustee steps into an invalid or unenforceable lien position is mistaken. Section 551 would lead to absurd results if a Trustee could avoid a lien under the strong arm powers of § 544, only to inherit an unenforceable lien.

The Ninth Circuit Court of Appeals declined to find that automatic preservation under § 551 applies "only to the extent that the interest is otherwise valid under state law." *In re Van de Kamp's Dutch Bakeries,* 908 F.2d 517, 518 (9th Cir.1990). In *Van de Kamp's,* the trustee avoided a fraudulent transfer under § 548. The creditor argued that the trustee could preserve the transfer under § 551, "only to the extent that the interest is otherwise valid under state law." *Id.* The court declined to follow such a reading of § 551, and found that "neither the text of § 551 nor its legislative history gives any indication that the court should engage in an examination of how competing interests might have fared in a prepetition state court action. Indeed ... the legislative history stresses the automatic nature of preservation under § 551." *Id.* at 519. *See also In re Wilkinson,* 186 B.R. 186, 193 (Bankr.D.Md.1995) (citing *Van de Kamp's*). Although the mortgage here may be invalid under Wisconsin law, the recordation of the mortgage more than 10 days after the loan was funded constituted an avoidable preference, and once the lien is avoided, the lien is automatically preserved for the benefit of the bankruptcy estate. A separate order will be issued entering a default judgment in favor of the Trustee.