**In re: Donna M. McCLEARN, Debtor.**

**No. 04–17344.**

United States Bankruptcy Court, W.D. Wisconsin.

Nov. 19, 2007.

Jessica Zerbst, Bell, Gierhart & Moore SC, Madison, WI, for debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Donna McClearn filed this chapter 7 proceeding over three years ago. Ms. McClearn's residence secured several mortgages. The Trustee has successfully avoided one of them. As a result of the avoidance of the mortgage, there may be equity in the residence available to creditors. The Trustee moves the Court to list the residence for sale with a sales agent. Ms. McClearn disputes that a sale of the property would net sufficient proceeds to justify the sale.

The preliminary (and probably determinative) question is, as between the debtor (in the position of her homestead exemption) and the bankruptcy estate, who benefits from the Trustee's successful avoidance of the mortgage? In this case, it is the Trustee.

The Trustee avoided a voluntary mortgage given to DFZ Enterprises, Inc. ("DFZ") on November 12, 2003, in the amount of $100,000. Order for Default J., *Claire Ann Resop, Trustee, v. DFZ Enterprises, Inc.*, Adv. Case No. 06–205 (Docket No. 14 Bankr.W.D. Wis. Dec. 20, 2006). The underlying debt was antecedent, although it is not clear when or how the original debt was incurred. Ms. McClearn did not sign a mortgage note relating to the mortgage. The transfer was found to have been given without valuable consideration.

Wisconsin Statute § 242.04 is entitled "Transfers fraudulent as to present and future creditors."

(1) A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditors claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

. . . . .

2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtors ability to pay as they became due.

Wis. Stat. § 242.05(1)

Wisconsin allows creditors to avoid fraudulent transfers of the type described in § 242.02. Wis. Stat. § 242.07(1)(a). The Trustee's complaint against DFZ alleged facts which demonstrated that the DFZ mortgage was fraudulent under Wis. Stat. § 242.02, and moved the Court to avoid the mortgage, invoking the Trustee's strong-arm powers as a hypothetical lien creditor under 11 U.S.C. § 544. Default judgment was entered against DFZ, and the Trustee avoided the DFZ mortgage as a fraudulent transfer pursuant to § 544. Fraudulent transfers avoided by the trustee under § 544 are preserved for the benefit of the bankruptcy estate.

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551

■ Under a plain reading of § 551, the avoided transfer is not preserved for the benefit of the debtor or her exemptions. This general rule is subject only to limited exceptions, none of which applies here. *E.g.,* § 522(g) (the transfer was not voluntary); § 522(i) (the debtor avoided the transfer).

■ The transfer avoided is not merely "preserved for the benefit of the estate"— when an interest is fraudulently transferred, the trustee takes title to said interest "The trustee in bankruptcy gets the title to all property which has been transferred by the bankrupt in fraud of creditors...." *Moore v. Bay,* 284 U.S. 4, 5, 52 S.Ct. 3, 76 L.Ed. 133 (1931). "The trustee ... inherits the position of the entity whose lien was avoided...." Colliers on Bankruptcy, ¶ 551.02 (15th ed.), *accord, Givens v. Countrywide Home Loans, Inc. (In re Jarosz),* 322 B.R. 662, 674 (Bankr. D.Wis.2005) (Kelly, J) (holding that the trustee takes the position of the entity whose lien was avoided free of the defects which rendered the lien avoidable). The Trustee in this case now "holds" the mortgage for the benefit of the estate. The Trustee's interest therefore primes Ms. McClearn's exemption.

This Court confronted a similar issue in *In re Witt,* 273 B.R. 573 (Bankr.D.Wis. 2000). In that case, the trustee avoided a lien on a car pursuant to § 544 (the lien was improperly perfected). The car was worth roughly the amount of the avoided lien and there were no other impairments on the car. The debtor had claimed an exemption in the car. This court explained,

> The exemption, though valid by default, attached only to the debtor's interest in the car on the petition date. The equity later created by the trustee's lien avoidance did not exist on the effective date of the exemption. It could be claimed only under § 522(g) which is unavailing to the debtor.... In the event that the sale of the car yields value in excess of the avoided lien, the claimed exemption will attach to that value.

*In Re Witt,* at 578, 579.

Thus, the Trustee may recover from a sale of the residence the amount of the avoided mortgage according to her priority. If any equity remains after the Trustee's interest is satisfied, it is paid to Ms. McClearn in the amount of her exemption. Proceeds beyond that would be paid to the Trustee.

■ To determine the likelihood of the estate benefitting from a sale, the value of the property must be estimated. The Court has been presented with various indicia of the value of the residence. A hearing was held on January 30, 2007 on the Trustee's objection to Ms. McClearn's claim of a homestead exemption. At that hearing the value of the residence was in

dispute. The evidence established that the value of the home was between $289,000 and $425,000. The schedules originally indicated that the house was worth $289,000. Tax assessments placed the value at $289,100 in 2003. An appraisal valued the property at $425,000 in February, 2003. Ms. McClearn testified at a divorce proceeding in 2003 that the value was $340,000. Prior to filing bankruptcy, Ms. McClearn listed the residence at $475,000 and later at $410,000, but the property was not sold. The Trustee seeks to list the property at $535,000, a value recommended by the Trustee's proposed real estate broker. Based on these indicia of value it is likely that a sale by the Trustee will generate at least $425,000.[1]

■ The proceeds of the sale must be applied to impairments on the property before the Trustee realizes any benefit. The following approximate charges prime the interest of the bankruptcy estate. First, the real estate broker's commission for the sale of the residence is six percent, or about $25,500. Second, closing costs are in the neighborhood of $2,000. Third, the residence secures two mortgages with Farmers and Merchants State Bank in the approximate amount of $310,000.[2] Fourth, there are overdue real estate taxes in the amount of $24,000. Fifth, Ms. McClearn has been making payments on the mortgages for over three years. The Trustee would not be entitled to the postpetition earnings[3] of Ms. McClearn insofar as these earnings have been applied to the mortgages, but the appropriate reimbursement of this money would have to be calculated to account for the value of Ms. McClearn's tenancy in the residence.

The encumbrances and costs total approximately $361,500. It is highly likely that the bankruptcy estate will be sufficiently benefitted by the sale of the property to justify the granting of the Trustee's motion. It may be so ordered.

## ORDER GRANTING TRUSTEE'S APPLICATION FOR EMPLOYMENT OF A REAL ESTATE BROKER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that the Trustee's Application for Employment of a Real Estate Broker is GRANTED.

1. A final note on valuation: Ms. McClearn asserts that certain "shoreline improvements" must be made pursuant to DNR regulations. The expense and necessity of these improvements are too uncertain to consider in the property's value.

2. Ms. McClearn has paid down over $20,000 in principal on the mortgage since the time of filing, however, Ms. McClearn estimates that the bank's bankruptcy-associated litigation

costs have more than offset these payments. McClearn Aff. ¶ 1.e. Ms. McClearn estimates that the mortgage is at least $300,000. *Id.*

3. The Trustee is entitled to any appreciation of the residence, contrary to Ms. McClearn's contention. The residence is property of the estate and has been since the date of filing. § 541.